STATE v. PINKNEY SHIPMAN.

*Assault and Battery.*

Defendant, after using threatening language with reference to the prosecutor and in his hearing, advanced upon him with a knife, continuing the use of violent and menacing expressions; the evidence left it doubtful as to whether or not the knife was open; when defendant got within five or six feet of the prosecutor, the latter said, "I shall have to go away," and withdrew from the work on which he was engaged: *Held*, that defendant was properly convicted of an assault.

(*State* v. *Rawles*, 65 N. C., 334, cited and approved.)

INDICTMENT for an Assault and Battery tried at Spring Term, 1879, of HENDERSON Superior Court, before *Gudger, J.*

There was a verdict of guilty, judgment, appeal by defendant.

*Attorney General*, for the State.
*Messrs. J. L. Henry* and *T. F. Davidson*, for defendant.

ASHE, J.   The defendant was indicted with one Charles Shipman for an assault upon the person of John Maxwell, and was put alone upon his trial.

On the trial it was in evidence that the prosecutor, Maxwell, had been employed by one Holbert to manage a distillery which he had erected and was operating upon the land of defendant, with his consent; that the defendant and his son soon after the prosecutor commenced work came to

33

the distillery, and that defendant held several private con-
versations, first with a negro who was there, and then with
his son, Charles, and while the defendant was out talking
with the negro, Charles the son proposed to swap knives and
pistols with the prosecutor who told him he had no pistol.
The defendant came again into the house, and while in pri-
vate conversation with Charles, the prosecutor heard one of
them say to the other, "d—n him, if he stays here I'll kill
him." They both then having knives in their hands, but
whether open or not the testimony does not disclose, moved
to where the prosecutor was at the furnace, the defendant
looking angry and saying, " I am cock of the walk and boss
of the place; after I cut three or four pieces of your liver
out, I will boss this place." And when they got within five
or six feet of the prosecutor, he said he would have to go
away, and did leave.

Upon this evidence the defendant asked the court to in-
struct the jury, " that if the defendant was not nearer than six
feet at the time of the offence, and although having a knife
in his hand not drawn, yet made no threat at the time that
he would use it upon the prosecutor, he is not guilty of an
assault." The court declined to give the instruction and the
defendant excepted. The court then charged the jury that
if they believed the evidence, Maxwell had the right to be
at the distillery, and if they should find that the conduct
and words and acts of the defendant, and the exhibition of
his knife (if they found the facts) were such as put Maxwell
in fear and caused him to go away from them, the defendant
would be guilty. There was a verdict of guilty. The de-
fendant obtained a rule for a new trial, the rule was dis-
charged, and the defendant appealed to this court.

There was no error in the refusal of the court to give the
instruction prayed for. The instruction was not warranted
by the facts in the case. It was predicated upon the idea
that there was no threat at the time the defendant ap-

proached within six feet of the prosecutor; but the manner and the language of the defendant were certainly very threatening. And while we think His Honor's charge to the jury was rather loosely given, we cannot say it was erroneous when considered with the facts of the case.

It is manifest that the defendant intended by violence if necessary to drive the prosecutor from his place of business. Those private conversations with the negro and his son, the proposition of the son to swap knives and pistols with the prosecutor, a mere pretence for ascertaining whether he was armed or not, the threat that they would kill him if he stays there, the exhibition of knives, all indicate a hostile purpose.

This court has decided that if a person be at a place where he has the right to be, and other persons having in their possession dangerous weapons, by following and threatening him, put him in fear and induce him to go home sooner than he would have done, or by a different road from that he was wont to go, they would be guilty of an assault, though never nearer to him than seventy-five yards. *State* v. *Rawles*, 65 N. C., 334. This is quite as strong a case against the defendant as that. In that case the prosecutor was repairing his fence, and one of the defendants, the father of the others, came to the place where he was at work, and after some conversation the prosecutor left, and was soon followed by the father and three sons, using threatening and insulting language, and were armed, one with a manure fork, another with a hoe, and the third with a gun, but none of these weapons were taken from the shoulders of those who bore them, and they never approached nearer than seventy-five yards of the prosecutor, but put him in fear and induced him to hasten home by a different road from that he was in the habit of travelling.

In our case the prosecutor was where he had the right to be. When he observed the private conferences of the de-

fendant, the negro, and his son, and overheard the threat to kill him if he staid there, it was sufficient to arouse his apprehensions. But when the defendant and his son, each with a knife in his hand, approached within five or six feet of him, the father looking angry and saying "I am the cock of the walk and boss of this place; after I cut three or four pieces of your liver out I will boss this place," it was calculated to excite in the prosecutor well grounded fears for his safety; and to show that he was alarmed, he left immediately, saying, "I shall have to go away," evidently to avoid the imminent danger to which he was exposed. The defendant had approached so near to him that with one step forward and opening the knife if shut, the work of but a moment, the prosecutor being unarmed, would have been entirely at his mercy. He had no alternative but to stand and encounter the unequal conflict, or abandon his place of business.

We think upon the authority of *Rawles'* case the defendant is guilty of the assault, and there is no error. Let this be certified to the superior court of Henderson county.

PER CURIAM.                                    No error.