IN THE SUPREME COURT OF NORTH CAROLINA

No. 474PA14

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

COREY DEON FLOYD

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 238 N.C. App. 110, 766 S.E.2d 361 (2014), vacating in part judgments entered on 30 October 2013 by Judge Jack W. Jenkins in Superior Court, Lenoir County, finding error in defendant's conviction for possession of a weapon of mass destruction, and remanding for a new trial on that charge. Heard in the Supreme Court on 31 August 2015.

*Roy Cooper, Attorney General, by Joseph L. Hyde, Assistant Attorney General, for the State-appellant.*

*Marilyn G. Ozer for defendant-appellee.*

JACKSON, Justice.

In this case we consider whether a prior conviction for "attempted assault with a deadly weapon inflicting serious injury" can support later charges for possession of a firearm by a convicted felon and attaining habitual felon status. We also consider whether defendant is entitled to a new trial on the basis that the trial court failed to act appropriately to address an impasse between defendant and his attorney

concerning the questioning of a prosecution witness on cross-examination. We answer the first inquiry in the affirmative. As to the second, we vacate the Court of Appeals' opinion and remand for entry of an order dismissing defendant's appeal without prejudice to his right to file a motion for appropriate relief.

On 16 October 2008, Kinston police received information that a man was "hanging" in a specific area of town while "carrying around" a "sawed-off shotgun . . . in his pants." Upon reaching the scene and seeing the man—whom one of the officers recognized as defendant—officers began chasing him. Detective Robbie Braswell, who was directly behind defendant, observed defendant pull a shotgun from the waistband of his pants and throw it over a fence into a yard. Detective Braswell stopped chasing defendant and secured the weapon.

Defendant was arrested approximately two years later. On 31 January 2011, defendant was indicted for possession of a firearm by a convicted felon, possession of a weapon of mass destruction, and attaining habitual felon status. The indictment for possession of a firearm by a convicted felon listed the underlying felony as "N.C.G.S. 14[-]32(a) Attempted Assault With a Deadly Weapon Inflicting Serious Injury," with defendant having "pled guilty on December 5, 2005," for which he was "sentenced to 25-30 months in the North Carolina Department of Corrections."[1] This

---

[1] Section 14-32 describes three different types of felonious assault with a deadly weapon and assigns varying punishment levels to each as follows:

conviction also was listed in the habitual felon indictment as one of the three prior felony offenses required to support a finding of habitual felon status. Defendant pleaded not guilty to all charges.

The case proceeded to trial in October 2013. The State submitted a copy of the 5 December 2005 judgment showing the prior conviction for attempted assault with a deadly weapon inflicting serious injury. At the close of the State's evidence, defendant moved to dismiss the possession of a firearm by a convicted felon charge for insufficiency of the evidence on grounds that the underlying felony conviction listed in the indictment as the basis for this charge, attempted assault with a deadly weapon, is not a recognized crime in North Carolina. In addition to the 5 December 2005 judgment, the State submitted copies of two other prior felony conviction judgments in support of the habitual felon charge. Defendant moved to dismiss the

---

(a) Any person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury shall be punished as a Class C felon.

(b) Any person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon.

(c) Any person who assaults another person with a deadly weapon with intent to kill shall be punished as a Class E felon.

N.C.G.S. § 14-32 (2015). Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury pursuant to section 14-32(a), but ultimately pleaded no contest to "attempted assault with a deadly weapon inflicting serious injury." He was punished as a Class F felon.

habitual felon charge on the same grounds, asserting that the 5 December 2005 felony conviction is invalid. The trial court denied both motions. The jury found defendant guilty of possession of a weapon of mass destruction, possession of a firearm by a convicted felon, and attaining habitual felon status. The trial court sentenced defendant to two concurrent terms of 151 to 191 months of imprisonment.

Defendant appealed. In a unanimous decision, the Court of Appeals concluded that "attempted assault is not a recognized criminal offense in North Carolina" and therefore that defendant's 2005 conviction for attempted assault with a deadly weapon inflicting serious injury could not support the convictions for possession of a firearm by a convicted felon and attaining habitual felon status. *Floyd*, 238 N.C. App. at 115, 766 S.E.2d at 366. In pertinent part, the court reasoned:

> In *State v. Currence*, 14 N.C. App. 263, 188 S.E.2d 10, *cert. denied*, 281 N.C. 315, 188 S.E.2d 898-99, we . . . not[ed] that an assault consists of "an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another." *Id.* at 265, 188 S.E.2d at 12 (quoting *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967)). As a result, since the effect of an attempted assault verdict was to find the defendant guilty of an "attempt to attempt" and since "[o]ne cannot be indicted for an attempt to commit a crime where the crime attempted is in its very nature an attempt," *id.*, we held that an attempted assault is simply not a recognized criminal offense in this jurisdiction.

*Floyd*, 238 N.C. App. at 114, 766 S.E.2d at 366 (second alteration in original). Accordingly, the court held that the trial court erred by denying defendant's motions

to dismiss the charges of possession of a firearm by a convicted felon and attaining habitual felon status. *Id*. at 127, 766 S.E.2d at 374.

Turning to the remaining charge of possession of a weapon of mass destruction, the Court of Appeals concluded that the trial court failed to identify and properly address an impasse that arose between defendant and his trial counsel. The Court of Appeals determined that this failure violated defendant's constitutional right to control the nature of his defense and therefore granted defendant a new trial on this charge. *Id*. at 127-28, 766 S.E.2d at 374. The State filed a petition for discretionary review, which we allowed on 9 April 2015.

In its appeal the State argues that the Court of Appeals' conclusion that attempted assault is not a recognized criminal offense in North Carolina was based upon an overly narrow definition of assault. As a result, the State contends that the Court of Appeals incorrectly held that defendant's 2005 conviction for attempted assault with a deadly weapon inflicting serious injury could not support the convictions for possession of a firearm by a convicted felon and attaining habitual felon status. We agree.

The offense of possession of a firearm by a convicted felon has two essential elements: (1) the defendant has been convicted of a felony, and (2) the defendant subsequently possessed a firearm. N.C.G.S. § 14-415.1(a) (2015). A person may be charged with attaining habitual felon status when he or she "has been convicted or

pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof." *Id.* § 14-7.1 (2015). In this case the State relied upon defendant's 2005 conviction for attempted assault with a deadly weapon inflicting serious injury to support charges against him pursuant to these statutes. Accordingly, the validity of defendant's convictions depends upon whether attempted assault with a deadly weapon inflicting serious injury is recognized as a criminal offense pursuant to our current law.

"The two elements of an attempt to commit a crime are: (1) An intent to commit it, and (2) an overt act done for that purpose, going beyond mere preparation, but falling short of the completed offense." *State v. Powell*, 277 N.C. 672, 678, 178 S.E.2d 417, 421 (1971) (citations omitted). An attempt crime "is punishable under the next lower classification as the offense which the offender attempted to commit." N.C.G.S. § 14-2.5 (2015). As a logical matter, these principles may be applied to the offense of assault with a deadly weapon inflicting serious injury in a straightforward fashion. A person who intends to "assault[ ] another person with a deadly weapon and inflict[ ] serious injury," and who does an overt act for that purpose going beyond mere preparation, but who ultimately fails to complete all the elements of this offense—for example, by failing to inflict a serious injury—would be guilty of the attempt rather than the completed offense. N.C.G.S. § 14-32(b).

-6-

In *Currence* our Court of Appeals highlighted a different consideration: this Court has indicated that a person "cannot be indicted for an attempt to commit a crime where the crime attempted is in its very nature an attempt." 14 N.C. App. at 265, 188 S.E.2d at 12 (quoting *State v. Hewett*, 158 N.C. 627, 629, 74 S.E. 356, 357 (1912)). The court stated that

> assault is generally defined as "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm."

*Id.* at 265, 188 S.E.2d at 12 (quoting *Roberts*, 270 N.C. at 658, 155 S.E.2d at 305). The court then reasoned that attempted assault amounted to "an attempt to attempt." *Id.* at 265, 188 S.E.2d at 12 (quotation marks omitted).

Initially, we note that reliance upon *Hewett* may be questionable in this context because *Hewett* involved a substantially different legal issue. The defendant in *Hewett* was charged in an indictment that failed to allege his criminal intent. 158 N.C. at 628, 74 S.E. at 357. Nevertheless, this Court concluded that by alleging that the defendant attempted to commit rape, the indictment necessarily included the intent element. *Id.* at 629, 74 S.E. at 357. As support for this conclusion, the Court stated:

> practically all definitions of an attempt to commit a crime, when applied to the particular crime of rape, necessarily imply and include "an intent" to commit it.

There may be offenses when in their application to them there is a distinction between "attempt" and "intent," but that cannot be true as applied to the crime of rape. There is no such criminal offense as an "attempt to commit rape." It is embraced and covered by the offense of "an assault with intent to commit rape," and punished as such.

As held by the Supreme Court of California, one cannot be indicted for an attempt to commit a crime where the crime attempted is in its very nature an attempt.

*Id.* at 629, 74 S.E. at 357 (citing, *inter alia*, *People v. Thomas*, 63 Cal. 482, 482 (1883) (per curiam)).[2] Since *Hewett* did not involve a defendant who was "indicted for an attempt to commit a crime where the crime attempted is in its very nature an attempt," *id.* at 629, 74 S.E. at 357, this statement is apparently dictum. In any event, because we conclude that attempted assault is not an attempt of an attempt, and thus does not implicate the dicta in *Hewett*, we do not address the extent to which *Hewett* may apply to other criminal offenses not at issue in the case *sub judice*.

Specifically, we observe that by stating that attempted assault amounts to "an attempt to attempt," 14 N.C. App. at 265, 188 S.E.2d at 12, the court in *Currence* overlooked an important aspect of the law of assault in North Carolina. Although our statutes criminalize the act of assault, *see, e.g.*, N.C.G.S. § 14-32.4(a) (2015), "[t]here

---

[2] Although the 1912 decision in *Hewett* stated that "[t]here is no such criminal offense as an 'attempt to commit rape,'" the offense of attempted rape is recognized in our law today. *See, e.g.*, *State v. Wortham*, 318 N.C. 669, 671, 351 S.E.2d 294, 296 (1987) ("[T]he elements of attempted rape are (1) 'the *intent* to commit the rape and [2] an *overt act* done for that purpose. . . .'") (alterations in original) (quoting *State v. Freeman*, 307 N.C. 445, 449, 298 S.E.2d 376, 379 (1983))).

is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules," *Roberts*, 270 N.C. at 658, 155 S.E.2d at 305. In *Roberts* we explained that our common law encompasses "two rules under which a person may be prosecuted for assault in North Carolina." *Id.* at 658, 155 S.E.2d at 305 (citation omitted).

First, as *Currence* recognized, we noted that assault may be defined as "an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *Roberts*, *id.* at 658, 155 S.E.2d at 305 (citations omitted) (quoting 1 Strong's North Carolina Index: *Assault and Battery* § 4 (1957)). We stated that this definition of assault "places emphasis on the intent or state of mind of the person accused." *Id.* at 658, 155 S.E.2d at 305.

Second, we described another definition of assault, which the Court of Appeals did not acknowledge in *Currence*. *Compare id.* at 658, 155 S.E.2d at 305, *with Currence*, 14 N.C. App. at 265, 188 S.E.2d at 12. We explained:

> The decisions of the Court have, in effect, brought forth another rule known as the "show of violence rule," which places the emphasis on the reasonable apprehension of the person assailed. The "show of violence rule" consists of a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed.

*Roberts*, 270 N.C. at 658, 155 S.E.2d at 305. Our jurisprudence regarding the show-of-violence rule appears to have evolved from early cases in which a person caused another to flee, leave a place sooner than desired, or otherwise alter course through the threatened use of a weapon. *See State v. Rawles*, 65 N.C. 334 (1871); *State v. Church*, 63 N.C. 15 (1868); *State v. Hampton*, 63 N.C. 13 (1868). In *State v. Shipman*, 81 N.C. 513 (1879), one of the earliest cases in which this Court articulated the show-of-violence rule, the evidence showed that the defendant had used threatening language against another man and walked with a knife in his hand to within six feet of where the other man was standing. *Id.* at 514. Upon seeing this threatening display, the other man became "alarmed" and "left immediately." *Id.* at 516. In concluding that the defendant's behavior constituted assault, this Court explained that the definition of assault encompasses a situation in which "persons having in their possession dangerous weapons, by following and threatening [the victim], put him in fear and induce him to go home sooner than he would have done, or by a different road from that he was wont to go." *Id.* at 515 (citing *Rawles*, 65 N.C. 334).

As defined in *Roberts*, and as illustrated by *Shipman*, the show-of-violence rule does not involve an attempt to cause injury to another person, but is based upon a violent act or threat that causes fear in another person. Accordingly, although North Carolina law provides one definition of assault that describes the offense in terms of "an overt act or an attempt, or the unequivocal appearance of an attempt," our

common law also provides a second definition that does not include any reference to attempt. *Roberts*, 270 N.C. at 658, 155 S.E.2d at 305. Attempted assault is not an attempt of an attempt because assault may be defined by the show-of-violence rule. *Cf. State v. May*, 137 Ariz. 183, 186, 669 P.2d 616, 619 (Ct. App. 1983) (explaining that because the defendant was charged pursuant to an Arizona statute that defines assault in terms of "an act complete in itself and not an attempt to commit a different crime," "the academic arguments of whether criminal sanctions should attach to an attempt to commit an attempt are inapplicable"); *State v. Music*, 40 Wash. App. 423, 432, 698 P.2d 1087, 1093 (1985) (" 'Attempt to attempt' problems may arise with respect to the first type of assault because the *attempt* to commit a battery is an element of that type of assault. . . . However, since there is no attempt element in the second type of assault, a charge of attempted assault within that definition is not an 'attempt to attempt.' " (internal citation omitted)). We note that there is substantial overlap between the two definitions of assault because an overt act or attempt to do immediate physical injury to another person is likely to constitute a show of violence that causes fear and a change of behavior. As a result, relying upon the show-of-violence rule to define attempted assault does not create a significant limitation on the conduct covered by this offense.

For these reasons, we hold that the offense of attempted assault with a deadly weapon inflicting serious injury is recognized in North Carolina. We therefore reverse the portion of the Court of Appeals' opinion concluding that attempted assault

is not recognized in this state, that defendant's 2005 conviction is a nullity, and that as a result, the trial court erred by denying defendant's motion to dismiss the charges of possession of a firearm by a felon and attaining habitual felon status.[3]

Next, the State argues that the Court of Appeals incorrectly determined that defendant was entitled to a new trial based upon the trial court's alleged failure to recognize and address an impasse between defendant and his attorney during the trial. At the conclusion of defense counsel's cross-examination of Detective Braswell, defendant became agitated because he did not believe defense counsel was asking the right questions. Defendant stated, "I need to say something to the witness," began interrupting the trial judge, and then attempted to speak again, at which point the judge directed the jury to step out of the courtroom. After the jury had left the courtroom, this exchange took place:

> [Defendant]: You won't ask him what I need to ask him.
>
> The Court: Thank you. All right, let the record reflect that the twelve members of the jury and the alternate juror have left the courtroom. Let the record reflect that while the jurors were in here, [defendant] started asking questions. I called [defense] counsel to the bench, asked counsel . . . to go back and talk to [defendant], privately, to determine what [defendant's] questions were

---

[3] The State alternatively argues that even if attempted assault with a deadly weapon inflicting serious injury is not a recognized offense, defendant cannot raise that challenge at this stage in this proceeding because doing so would constitute an impermissible collateral attack. Because we conclude that this offense is recognized in this state, we do not reach the State's alternative argument.

or what [defendant] wanted to present to the jury. [Defense counsel] attempted to do so. In the meantime, [defendant] began speaking out on his own volition in the presence of the jury, and so the Court immediately sent the jury out of the courtroom.

And, [defendant], I can't let you disrupt this trial, and I've already warned you --

[Defendant]: I mean, I can -- I can question the witness.

The Court: Your lawyer questions the witness. You don't --

[Defendant]: Then I'll represent myself. I'm firing my lawyer.

The Court: No. No, you can't do that, I'm sorry.

[Defendant]: See, I can represent myself.

The Court: No, I'm sorry. In my discretion, I'm not allowing you to do that.

[Defendant]: I can represent myself. I can represent myself. It ain't -- ain't no kind of mess like that, because he ain't questioned him what I'm going to question him.

The Court: Well, you ask [defense counsel] what you want him to ask the --

[Defendant]: I done told him, and ain't none of that stuff been done, and I'm going for the --

The Court: You ask [defense counsel] what questions you want to present to the witnesses in front of the jury.

The State then requested a determination regarding whether defendant should be

held in contempt and removed from the courtroom for making repeated statements

in front of the jury.  The trial court instructed defendant to wait his turn before speaking and admonished him to cease engaging in disruptive behavior.  Defendant made additional comments regarding the questions he desired to pose to Detective Braswell:

> [Defendant]: . . .  I waited till it was our turn to question this witness, and now I ain't even questioned him.
>
> The Court:  Well, but the way the process works, you don't ask the questions, your attorney asks the questions.
>
> [Defendant]:  He didn't ask -- I told him to ask him. Things wasn't stated.  It was things I needed -- I needed to [sic] them to hear.
>
> The Court:  He is a professional.  He is --
>
> [Defendant]:  The truth be told about --
>
> The Court:  -- very experienced. He knows what he's doing. The manner in which he asks questions is part of the expertise provided by counsel.  It's part of the assistance of counsel that's provided.  And you are not an attorney, and you are relying on his assistan[ce].
>
> [Defendant]:  I know the law.  I know the law.
>
> The Court:  -- and you can talk to him and confer with him and let him know what questions you think should be asked, but he asks the questions, not you.
>
> [Defendant]:  He got -- he got to ask them, then, and put things out.  That's the thing, I'll represent myself.  I don't even need a counsel.

The trial court again denied defendant's request to represent himself and ordered that he be removed from the courtroom in light of his disruptive behavior throughout

the trial, but stated that defense counsel would be given frequent opportunities to consult with his client. Nonetheless, before his removal, defendant continued to challenge his counsel's questioning of Detective Braswell:

> [Defendant]: Well, see, I'll tell him the question, to ask him something, and he don't do it. Come on, man.
>
> The Court: Sir, you're doing it now, and I have not held you in contempt. In my discretion, I have not done that. The State has not brought any obstruction charges --
>
> [Defendant]: Well, I'm -- I'm gonna give him -- I'm gonna have -- I'm gonna talk to him so he can say what I would say?
>
> The Court: That's how it works, sir.
>
> [Defendant]: Exactly. And he didn't do it. That's what I'm talking about.
>
> The Court: Well, that's between you and [your trial counsel] --
>
> [Defendant]: I'm gonna get another attorney.
>
> The Court: -- that's not for me to interject.
>
> . . . .
>
> The Court: I've given you ample opportunity to not be disruptive, to assist in your defense while in the courtroom. It's readily apparent to the Court that you're not willing to do that.

The record does not disclose the nature of the questions defendant wanted his attorney to ask Detective Braswell.

Defendant argues that the trial court's failure to adequately address the impasse between defendant and his counsel regarding the questions to be asked of Detective Braswell, and the court's failure to instruct counsel to comply with defendant's wishes at that time, amounted to a denial of his constitutional rights to control his defense and confront witnesses. Defendant argues, and the Court of Appeals held, that the trial court's actions violated this Court's opinion in *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183 (1991).

In *Ali* we recognized that tactical decisions, including how to conduct cross-examination, which jurors to strike, and the motions to be made at trial are within the province of the attorney. *Id.* at 404, 407 S.E.2d at 189 (citation omitted). The defendant in *Ali* argued that "the trial court denied him his right to assistance of counsel by allowing him, rather than his lawyers, to make the final decision regarding whether [a particular individual] would be seated as a juror." *Id.* at 402, 407 S.E.2d at 189. We stated that

> when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control; this rule is in accord with the principal-agent nature of the attorney-client relationship. In such situations, however, defense counsel should make a record of the circumstances, her advice to the defendant, the reasons for the advice, the defendant's decision and the conclusion reached.

*Id*. at 404, 407 S.E.2d at 189. Because defense counsel in *Ali* made such a record, we concluded that the defendant was not denied effective assistance of counsel. *Id*. at 404, 407 S.E.2d at 189-90.

> We have stated that

> > [ineffective assistance of counsel (IAC)] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing. . . .

> > . . . .

> > Accordingly, should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief (MAR)] proceeding.

*State v. Fair*, 354 N.C. 131, 166-67, 557 S.E.2d 500, 524-25 (2001) (citations omitted), *cert. denied*, 535 U.S. 1114 (2002). Here, defendant told the trial court that his attorney was not asking the questions defendant told him to ask Detective Braswell; however, the record does not shed any light on the nature or the substance of those desired questions. We note that defendant was generally disruptive throughout trial, was forced to leave the courtroom when this behavior escalated while Detective Braswell was on the witness stand, and had to consult with his attorney outside of court thereafter. In light of defendant's disruptive behavior, we cannot ascertain, without engaging in conjecture, whether defendant had a serious disagreement with

his attorney regarding trial strategy or whether he simply sought to hinder the proceedings. As a result, it cannot be determined from the cold record whether an absolute impasse existed as described in *Ali*. Accordingly, we vacate this portion of the Court of Appeals' opinion and remand this case to that court for entry of an order dismissing defendant's IAC claim without prejudice to his right to assert it in a motion for appropriate relief.

REVERSED IN PART; VACATED IN PART AND REMANDED.

Justice ERVIN did not participate in the consideration or decision of this case.

Justice NEWBY concurring.

I fully agree with the majority opinion. I write separately simply to emphasize another way to understand the validity of the attempt crime at issue. It seems confusion has arisen because the term "assault" sometimes refers to an attempted battery, but often in our criminal code "assault" refers to a completed battery. Here the disputed crime is attempted felonious assault with a deadly weapon inflicting serious injury under N.C.G.S. § 14-32. In this context, the term "assault" does not mean an attempted battery but requires a completed battery.

Section 14-32 describes three different types of felonious assault with a deadly

weapon and assigns varying punishment levels to each:

> (a)    Any person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury shall be punished as a Class C felon.
>
> (b)    Any person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon.
>
> (c)    Any person who assaults another person with a deadly weapon with intent to kill shall be punished as a Class E felon.

N.C.G.S. § 14-32 (2015).

In *State v. Birchfield* we recognized that the statutory definition of "assault"

under N.C.G.S. § 14-32 requires a completed battery:

> To warrant the conviction of an accused of a felonious assault *and battery* under G.S. 14-32 . . . the State must produce evidence sufficient to establish beyond a reasonable doubt that he did these four things: (1) That he committed an assault *and battery* upon another; (2) that he committed the assault and battery with a deadly weapon; (3) that he committed the assault and battery with intent to kill the victim of his violence; and (4) that he thus inflicted on the person of his victim serious injury not resulting in death.

235 N.C. 410, 413, 70 S.E.2d 5, 7 (1952) (emphases added) (citations omitted)

(upholding conviction for assault with a deadly weapon inflicting serious bodily

injury). Thus, while the statute uses the term "assault," it means "assault and

battery" or a completed battery. *See Williams v. United States*, No. 1:11CR408-1,

2014 WL 1608268, at *1 (M.D.N.C. Apr. 22, 2014) (unpublished) (noting that "while other . . . cases suggest a definition of misdemeanor assault under N.C. Gen. Stat. § 14-33 . . . the *Birchfield* definition of felony assault highlights the presence of a battery element").

Assault and battery is commonly defined as "the act of threatening to attack someone physically and then actually doing it." *Assault and Battery, Black's Law Dictionary* (10th ed. 2014). One who intends to commit felonious assault and battery with a deadly weapon, and who does an overt act for that purpose going beyond mere preparation, but who ultimately fails to complete all the elements of this offense, would be guilty of attempted felonious assault and battery under N.C.G.S. § 14-32 rather than the completed offense. *See State v. Powell,* 277 N.C. 672, 678, 178 S.E.2d 417, 421 (1971) (Proving "attempt" requires the State to show that a defendant intended to commit the underlying crime and committed "an overt act done for that purpose, going beyond mere preparation, but falling short of the completed offense.").

The record reflects that defendant, represented by counsel, pled guilty to the offense of attempted assault with a deadly weapon inflicting serious injury in violation of N.C.G.S. § 14-32. Nevertheless, defendant suggests that he should not be held accountable for a conviction based upon his own admissions and plea agreement and further asks us to speculate as to which of the elements under N.C.G.S. § 14-32 were satisfied. Since we are dealing with a theoretical issue, the question is simply whether under any scenario a defendant could be convicted of

attempted assault with a deadly weapon inflicting serious injury in violation of N.C.G.S. § 14-32. Because the statutory definition of "assault" as used in N.C.G.S. § 14-32 requires a completed battery, one can be convicted of attempting to commit the offense.

Justice BEASLEY concurring in part and dissenting in part.

I concur with the judgment of the Court as to defendant's challenge to the right to control his defense in the cross-examination of Detective Braswell. But, because I would conclude that attempted assault with a deadly weapon inflicting serious injury is not a cognizable offense in North Carolina, I would affirm the judgment of the Court of Appeals on this issue, and therefore, I respectfully dissent.

The issue before this Court is whether "attempted assault with a deadly weapon inflicting serious injury" describes a cognizable felony offense that can serve as an underlying felony conviction in a charge for possession of a firearm by a convicted felon and for attaining habitual felon status. I would hold that it is not for several reasons. First, the statutory framework laid out by our General Assembly in Chapter 14, Article 8 of the North Carolina General Statutes evidences the legislature's determination that one cannot be convicted of *attempting* an "assault with a deadly weapon inflicting serious injury." Second, I would hold that the show-

of-violence definition of assault is not applicable to the term "assault" in "assault with a deadly weapon inflicting serious injury." Finally, I would conclude that the show-of-violence theory of assault cannot be logically extended to include an inchoate crime—namely, an attempt.

First, the statutory framework laid out in Chapter 14, Article 8 demonstrates a legislative decision that attempted "assault with a deadly weapon inflicting serious injury" is not a crime for which a defendant may be convicted. Chapter 14, Article 8 was enacted to provide different punishments for varying degrees of the common law crime of assault and not as an endeavor to "create separate and distinct criminal offenses." *State v. Lefler*, 202 N.C. 700, 701, 163 S.E. 873, 874 (1932) ("The Legislature did not mean to create separate and distinct criminal offenses, such as assault with [a] deadly weapon, assault with serious damage, assault upon a woman when the man is over eighteen years of age, or any other kind of assault which is aggravated in its circumstances or [of] serious and lasting damage in its consequences." (quoting *State v. Smith*, 157 N.C. 578, 584, 72 S.E. 853, 855 (1911))). "There is but one offense, the crime of assault, and the varying degrees of aggravation were mentioned only for the purpose of graduating the punishment." *Id.* at 701, 163 S.E. at 874 (quoting *Smith*, 157 N.C. at 584, 72 S.E. at 855 (1911)).

For example, sbsection 14-32(b) states that "[a]ny person who assaults another person with a deadly weapon *and* inflicts serious injury shall be punished as a Class E felon," N.C.G.S. § 14-32(b) (2015) (emphasis added), and subdivision 14-33(c)(1)

states that any person who commits an assault and "[i]nflicts serious injury upon another person *or* uses a deadly weapon" is "guilty of a Class A1 misdemeanor," *id.* § 14-33(c)(1) (2015) (emphasis added). Under either statute a defendant would be guilty of assault but, based on how the assault was carried out, would be punished differently.

Here defendant was convicted in 2005 of attempted assault with a deadly weapon inflicting serious injury.[4] *See id.* § 14-32(b) ("Any person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon."). According to section 14-2.5, "[u]nless a different classification is expressly stated, an attempt to commit a misdemeanor or a felony is punishable under the next lower classification as the offense which the offender attempted to commit." *Id.* § 14-2.5 (2015). As such, defendant was punished as a Class F felon. The conduct that would constitute an "attempt" to "assault with a deadly weapon inflicting serious injury" is, however, subject to a different classification covered by

---

[4] Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury pursuant to subsection 14-32(a), but ultimately pleaded no contest to "attempted assault with a deadly weapon inflicting serious injury" and was punished as a Class F felon. Though the indictment against defendant in the present action states that his previous felony conviction was under subsection 14-32(a), it appears defendant's 2005 conviction was actually under subsection 14-32(b), as indicated by the language of what he pleaded to as well as how he was punished. Thus, I use subsection 14-32(b), as does the majority, as an illustration. However, the same rationale that follows can be applied to subsection 14-32(a), namely that any uncompleted element of that assault puts the offense under another enumerated statute, and is not properly classified as an attempt to violate that particular statute.

another assault statute, namely subdivision 14-33(c)(1). Therefore, defendant should not have been punished under the provisions of N.C.G.S. §§ 14-32(b) and 14-2.5.

As the majority reiterates, an attempt is (1) an intent to commit an act, and (2) "an overt act done for that purpose, going beyond mere preparation, but falling short of the completed offense." *State v. Powell*, 277 N.C. 672, 678, 178 S.E.2d 417, 421 (1971) (citations omitted). Because an attempt occurs when the defendant's actions "fall[ ] short of the completed offense," it follows that attempt necessitates that some element of the crime is not complete. As applied to the crime of "assault with a deadly weapon inflicting serious injury,"[5] the majority states:

> As a logical matter, these principles may be applied to the offense of assault with a deadly weapon inflicting serious injury in a straightforward fashion. A person who intends to "assault[ ] another person with a deadly weapon and inflict[ ] serious injury," and who does an overt act for that purpose going beyond mere preparation, but who ultimately fails to complete all the elements of this offense—for example, by failing to inflict a serious injury—would be guilty of the attempt rather than the complete offense.

Contrary to the majority's assertion, if a person "fails to complete all of the elements of the offense—for example, by failing to inflict a serious injury" or failing

---

[5] The elements of assault with a deadly weapon inflicting serious injury are "(1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Wilson*, 203 N.C. App. 110, 114, 689 S.E.2d 917, 920 (2010) (quoting *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997)).

to use a deadly weapon—that person is guilty of the type of assault described in N.C.G.S. § 14-33(c)(1),[6] which is an assault inflicting serious injury upon another person *or* by use of a deadly weapon, and *not* an attempt to violate subsection 14-32(b).

> The primary distinction between felonious assault under G.S. § 14-32 and misdemeanor assault under G.S. § 14-33 is that a conviction of felonious assault requires a showing that a deadly weapon was used *and* serious injury resulted, while if the evidence shows that only one of the two elements was present, i.e., that *either* a deadly weapon was used *or* serious injury resulted, the offense is punishable only as a misdemeanor.

*State v. Lowe*, 150 N.C. App. 682, 685, 564 S.E.2d 313, 316 (2002) (quoting *State v. Owens*, 65 N.C. App. 107, 110-11, 308 S.E.2d 494, 498 (1983)) (holding that it was plain error for the trial court not to instruct on misdemeanor assault inflicting serious injury under N.C.G.S. § 14-33 when it was questionable whether fists and a toilet seat or lid were used as deadly weapons).[7] Any "attempt" to "assault[ ] another person with a deadly weapon and inflict[ ] serious injury" that "fall[s] short of the completed offense" is, per the legislature's determination, an assault as described in another

---

[6] "Unless the conduct is covered under some other provision of law providing greater punishment, any person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she: (1) Inflicts serious injury upon another person or uses a deadly weapon[.]" N.C.G.S. § 14-33(c)(1).

[7] In *Owens* the Court of Appeals held that the trial judge should have submitted a jury instruction on misdemeanor assault with a deadly weapon under N.C.G.S. § 14-33 as well as on felonious assault under section 14-32 when there was evidence that the victim's injury was not serious. 65 N.C. App. at 111, 308 S.E.2d at 498.

statute, such as misdemeanor assault. Thus, in such a situation, a defendant should be convicted under the appropriate assault statute and not under a theory of "attempt" of a different statute.

That a defendant should be convicted under the appropriate assault statute is especially important given the legislature's classifications of various types of assault and their corresponding punishments. As stated above, a person who violates subsection 14-32(b) is guilty of a Class E felony and a person who violates subdivision 14-33(c)(1) is guilty of a Class A1 misdemeanor. If a person commits a subdivision 14-33(c)(1) misdemeanor assault by either inflicting serious injury on another person or by use of a deadly weapon, but is convicted for an attempted assault under section 14-32(b) instead, then that person would be punished for a Class F felony instead of a misdemeanor. *See* N.C.G.S. § 14-2.5.

The majority's holding here undermines the legislature's determination of how to differentiate and punish different types of assault by sanctioning charging and convicting defendants of a felony when these defendants would otherwise be facing a misdemeanor charge or conviction under the statutes as written.

Therefore, given the statutory scheme for assaults laid out by the General Assembly in Chapter 14, Article 8 of the North Carolina General Statutes, I would conclude that one cannot be convicted of attempting an "assault with a deadly weapon inflicting serious injury."

*Beasley, J., concurring in part and dissenting in part*

Second, attempted assault with a deadly weapon inflicting serious injury is not cognizable under the show-of-violence theory of assault. "There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules." *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967). Citing *Roberts*, the majority notes that this Court has defined two theories of assault. A person commits assault by

> an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

*Id.* at 658, 155 S.E.2d at 305 (quoting 1 Strong's North Carolina Index: *Assault and Battery* § 4 (1957)). A person also commits assault by "a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed." *Id.* at 658, 155 S.E.2d at 305.

In determining that attempted assault with a deadly weapon inflicting serious injury is a recognized offense in North Carolina, the majority holds that this attempted assault is possible under this Court's "show-of-violence" theory of assault.[8]

---

[8] The majority seems to acknowledge without explicitly stating that there is no such crime as an attempted "attempted battery" type of assault. I agree. Though the majority calls into question this Court's statement to that effect in *State v. Hewett*, 158 N.C. 627,

*Beasley, J., concurring in part and dissenting in part*

Nonetheless, at the end of its analysis, the majority does not explain how an assault under the show-of-violence theory would apply in the context of an attempted assault with a deadly weapon inflicting serious injury.

The majority states that

> [T]here is a substantial overlap between the two definitions of assault because an overt act or attempt to do immediate physical injury to another person is likely to constitute a show of violence that causes fear and change of behavior. As a result, relying upon the show-of-violence rule to define attempted assault does not create a significant limitation on the conduct covered by this offense.

I disagree. The majority's combination or "substantial overlap" of the two definitions of assault is essentially a reiteration of one definition of assault, specifically the "attempted battery" definition of assault: "[A]n overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to *put a person of reasonable firmness in fear of immediate bodily harm*." *Roberts*, 270 N.C. at 658, 155 S.E.2d at 305 (emphasis added) (citations omitted) (quoting 1 Strong's North Carolina Index: *Assault and Battery* § 4 (1957)). This definition of assault already takes into account that an overt act of violence or

---

629, 74 S.E. 356, 357 (1912) by labeling it dicta, "[i]t is universally agreed that there is no such crime as an attempt to commit an assault of the attempted battery variety." *Dabney v. State*, 159 Md. App. 225, 246, 858 A.2d 1084, 1096 (2004) (noting other states' stances on attempt of "attempted battery" assault as discussed in Marjorie A. Shields, Annotation, *Attempt to Commit Assault as Criminal Offenses*, 93 A.L.R. 5th 683 (2004)).

attempt to do immediate physical injury to another person is likely to cause fear and probably a change of behavior in another person. The show-of-violence theory then must be something different.

As noted by the majority in this case and this Court in *Roberts*, the show-of-violence rule developed from early decisions by this Court in which a person "offered to strike" another person, without yet "attempting to strike," but still the offer to strike—or show of violence—was such that it caused the other person to reasonably fear that immediate bodily harm would ensue if he or she did not take a different course of conduct. *See State v. Shipman*, 81 N.C. 513 (1879) (holding that the defendant committed assault when he used threatening language and walked within six feet of the victim with a knife in hand, which alarmed the victim and caused him to immediately leave in order to avoid imminent danger); *State v. Rawles*, 65 N.C. 334, 336-37 (1871) (holding that the defendants committed assault—an offer to strike—when they approached the victim with weapons while using threatening language, which caused the victim to fear imminent bodily injury and take a different path home, though none of the weapons were "taken from the [bearer's] shoulder" and they did not get nearer to the victim than about seventy-five yards); *State v. Church*, 63 N.C. 15 (1868) (holding that the defendant committed assault—an offer of violence—when he drew a pistol from its sheath but did not cock or point it and walked within ten steps of the victim using threatening language causing the victim to fear bodily harm and leave); *State v. Hampton*, 63 N.C. 13 (1868) (holding that the

defendant committed assault—an offer of violence—when he threatened to hit the victim and made a fist, but did not draw his arm back to hit him, causing the victim to fear bodily harm and take another course). As these early cases demonstrate, a show of violence—or an offer of violence as it was previously termed—is something less than an attempted violent act. *Hampton*, 63 N.C. 14 ("An assault is usually defined to be an offer, or attempt to strike another. An *attempt* means something more than an *offer*."). As such, one cannot attempt to "show violence" because by its nature a "show of violence" is something less than an attempt of violence.

Based on the observation that a show of violence is less than an attempt, I would conclude that the show-of-violence definition is not applicable to the statutory offense of "assault with a deadly weapon inflicting serious injury," much less an attempt of such action. As the majority notes in its opinion, "the show-of-violence rule does not involve an attempt to cause injury to another person, but is based upon a violent act or threat that causes fear in another person." And, as just described above, this show of violence is something less than or precedes an attempt to physically harm another. Thus, the show-of-violence definition of assault is inapposite to the type of assault described in subsection 14-32(b), in which infliction of a serious injury is an element. As such, only the common law definition that defines assault as "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of

another" is applicable to this assault statute.[9] For this reason as well, I disagree with the majority's conclusion that one can attempt an assault with a deadly weapon inflicting serious injury under a show-of-violence theory of assault.

Lastly, I disagree with the majority that North Carolina law recognizes any type of attempted assault. As this Court noted in *Roberts*, the difference between the two theories of assault is where the emphasis is placed. The common law rule "places emphasis on the intent or state of mind of the person accused," whereas the show-of-violence rule "places the emphasis on the reasonable apprehension of the person assailed." *Roberts*, 270 N.C. at 658, 155 S.E.2d at 305. Thus, assault is either an attempt to cause injury or a show of violence that would put a reasonable person in

---

[9] Admittedly, it would be helpful if the legislature included a definition of assault in the felony assault statute as the statute does seem to envision a battery as the concurrence asserts. While *State v. Birchfield* describes the elements of section 14-32 to include a battery, 235 N.C. 410, 413, 70 S.E.2d 5, 7 (1952), this Court has recognized on numerous other occasions that the elements of the offense do not require a completed battery. *See*, *e.g.*, *State v. King*, 343 N.C. 29, 35-36, 468 S.E.2d 232, 237 (1996) ("The essential elements of assault with a deadly weapon with intent to kill inflicting serious injury are: '(1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death.'" (quoting *State v. Reid*, 335 N.C. 647, 654, 440 S.E.2d 776, 780 (1994))), *State v. Reid*, 335 N.C. 647, 654, 440 S.E.2d 776, 780 (1994) ("The essential elements of the crime are (1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death."), *State v. Meadows*, 272 N.C. 327, 331, 158 S.E.2d 638, 640 (1968) ("The crime of felonious assault, created and defined by G.S. s 14-32, consists of these essential elements: (1) An assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) Not resulting in death."); *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962) ("The statutory offense embodies (1) assault, (2) with a deadly weapon, (3) the use of the weapon must be with intent to kill, (4) the result of the use must be the infliction of serious injury, and (5) which falls short of causing death.").

*Beasley, J., concurring in part and dissenting in part*

fear imminent injury. The majority concludes that attempted assault is a cognizable offense in North Carolina under the show-of-violence theory of assault but does not explain how one may attempt to show violence, except to say that the definition of a show-of-violence assault "does not include any reference to attempt," and thus by definition, because it is not an attempt to attempt, it may be attempted. As explained above, relying upon the show-of-violence rule to describe attempted assault is not logical because a show of violence causing someone to reasonably fear an injury is something less than even attempting to injure.

Therefore, I would conclude that attempted assault with a deadly weapon inflicting serious injury is not a crime in North Carolina.[10] Because I would hold that attempted assault with a deadly weapon is not a cognizable offense in North Carolina and therefore cannot serve as an underlying conviction for possession of a firearm by a felon or for attaining habitual felon status, these judgments should be vacated. For the reasons stated above, I would affirm the Court of Appeals on this issue and conclude that attempted assault is not a crime in North Carolina under our common law definition of assault. Thus, I respectfully dissent from the majority's holding on

---

[10] The State argued in its brief that the defendant could not challenge his conviction of attempted assault with a deadly weapon inflicting serious injury because such a challenge would be an impermissible collateral attack. At oral arguments, however, the State conceded that an indictment that alleges an offense that does not exist would not create jurisdiction in the trial court. The trial court does not have jurisdiction to enter judgment on a nonexistent crime and thus defendant's attempted assault conviction would be a nullity.

*Beasley, J., concurring in part and dissenting in part*

this issue.