JACKSON, Justice.
In this case we consider whether a prior conviction for “attempted assault with a deadly weapon inflicting serious injury” can support later charges for possession of a firearm by a convicted felon and attaining habitual felon status. We also consider whether defendant is entitled to a new trial on the basis that the trial court failed to act appropriately to address an impasse between defendant and his attorney concerning the questioning of a prosecution witness on cross-examination. We answer *331 the first inquiry in the affirmative. As to the second, we vacate the Court of Appeals’ opinion and remand for entry of an order dismissing defendant’s appeal without prejudice to his right to file a motion for appropriate relief.
On 16 October 2008, Kinston police received information that a man was “hanging” in a specific area of town while “carrying around” a “sawed-off shotgun... in his pants.” Upon reaching the scene and seeing the man—whom one of the officers recognized as defendant—officers began chasing him. Detective Robbie Braswell, who was directly behind defendant, observed defendant pull a shotgun from the waistband of his pants and throw it over a fence into a yard. Detective Braswell stopped chasing defendant and secured the weapon.
Defendant was arrested approximately two years later. On 31 January 2011, defendant was indicted for possession of a firearm by a convicted felon, possession of a weapon of mass destruction, and attaining habitual felon status. The indictment for possession of a firearm by a convicted felon listed the underlying felony as “N.C.G.S. 14[-]32(a) Attempted Assault With a Deadly Weapon Inflicting Serious Injury,” with defendant having “pled guilty on December 5, 2005,” for which he was “sentenced to 25-30 months in the North Carolina Department of Corrections.”[1] This conviction also was listed in the habitual felon indictment as one of the three prior felony offenses required to support a finding of habitual felon status. Defendant pleaded not guilty to all charges.
The case proceeded to trial in October 2013. The State submitted a copy of the 5 December 2005 judgment showing the prior conviction *332 for attempted assault with a deadly weapon inflicting serious injury. At the close of the State’s evidence, defendant moved to dismiss the possession of a firearm by a convicted felon charge for insufficiency of the evidence on grounds that the underlying felony conviction listed in the indictment as the basis for this charge, attempted assault with a deadly weapon, is not a recognized crime in North Carolina. In addition to the 5 December 2005 judgment, the State submitted copies of two other prior felony conviction judgments in support of the habitual felon charge. Defendant moved to dismiss the habitual felon charge on the same grounds, asserting that the 5 December 2005 felony conviction is invalid. The trial court denied both motions. The jury found defendant guilty of possession of a weapon of mass destruction, possession of a firearm by a convicted felon, and attaining habitual felon status. The trial court sentenced defendant to two concurrent terms of 151 to 191 months of imprisonment.
Defendant appealed. In a unanimous decision, the Court of Appeals concluded that “attempted assault is not a recognized criminal offense in North Carolina” and therefore that defendant’s 2005 conviction for attempted assault with a deadly weapon inflicting serious injury could not support the convictions for possession of a firearm by a convicted felon and attaining habitual felon status. Floyd, 238 N.C. App. at 115, 766 S.E.2d at 366. In pertinent part, the court reasoned:
In State v. Currence, 14 N.C. App. 263, 188 S.E.2d 10, cert. denied, 281 N.C. 315, 188 S.E.2d 898-99, we . . . not[ed] that an assault consists of “an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another.” Id. at 265, 188 S.E.2d at 12 (quoting State v. Roberts, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967)). As a result, since the effect of an attempted assault verdict was to find the defendant guilty of an “attempt to attempt” and since “[o]ne cannot be indicted for an attempt to commit a crime where the crime attempted is in its very nature an attempt,” id., we held that an attempted assault is simply not a recognized criminal offense in this jurisdiction.
Floyd, 238 N.C. App. at 114, 766 S.E.2d at 366 (second alteration in origiT nal). Accordingly, the court held that the trial court erred by denying defendant’s motions to dismiss the charges of possession of a firearm by a convicted felon and attaining habitual felon status. Id. at 127, 766 S.E.2d at 374.
*333 Turning to the remaining charge of possession of a weapon of mass destruction, the Court of Appeals concluded that the trial court failed to identify and properly address an impasse that arose between defendant and his trial counsel. The Court of Appeals determined that this failure violated defendant’s constitutional right to control the nature of his defense and therefore granted defendant a new trial on this charge. Id. at 127-28, 766 S.E.2d at 374. The State filed a petition for discretionary review, which we allowed on 9 April 2015.
In its appeal the State argues that the Court of Appeals’ conclusion that attempted assault is not a recognized criminal offense in North Carolina was based upon an overly narrow definition of assault. As a result, the State contends that the Court of Appeals incorrectly held that defendant’s 2005 conviction for attempted assault with a deadly weapon inflicting serious injury could not support the convictions for possession of a firearm by a convicted felon and attaining habitual felon status. We agree.
The offense of possession of a firearm by a convicted felon has two essential elements: (1) the defendant has been convicted of a felony, and (2) the defendant subsequently possessed a firearm. N.C.G.S. § 14-415.1(a) (2015). A person may be charged with attaining habitual felon status when he or she “has been convicted or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof.” Id. § 14-7.1 (2015). In this case the State relied upon defendant’s 2005 conviction for attempted assault with a deadly weapon inflicting serious injury to support charges against him pursuant to these statutes. Accordingly, the validity of defendant’s convictions depends upon whether attempted assault with a deadly weapon inflicting serious injury is recognized as a criminal offense pursuant to our current law.
“The two elements of an attempt to commit a crime are: (1) An intent to commit it, and (2) an overt act done for that purpose, going beyond mere preparation, but falling short of the completed offense.” State v. Powell, 277 N.C. 672, 678, 178 S.E.2d 417, 421 (1971) (citations omitted). An attempt crime “is punishable under the next lower classification as the offense which the offender attempted to commit.” N.C.G.S. § 14-2.5 (2015). As a logical matter, these principles may be applied to the offense of assault with a deadly weapon inflicting serious injury in a straightforward fashion. A person who intends to “assaultf ] another person with a deadly weapon and inflict[ ] serious injury,” and who does an overt act for that purpose going beyond mere preparation, but who *334 ultimately fails to complete all the elements of this offense—for example, by failing to inflict a serious injury—would be guilty of the attempt rather than the completed offense. N.C.G.S. § 14-32(b).
In Currence our Court of Appeals highlighted a different consideration: this Court has indicated that a person “cannot be indicted for an attempt to commit a crime where the crime attempted is in its very nature an attempt.” 14 N.C. App. at 265, 188 S.E.2d at 12 (quoting State v. Hewett, 158 N.C. 627, 629, 74 S.E. 356, 357 (1912)). The court stated that
assault is generally defined as “an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.”
Id. at 265, 188 S.E.2d at 12 (quoting Roberts, 270 N.C. at 658, 155 S.E.2d at 305). The court then reasoned that attempted assault amounted to “an attempt to attempt.” Id. at 265, 188 S.E.2d at 12 (quotation marks omitted).
Initially, we note that reliance upon Hewett may be questionable in this context because Hewett involved a substantially different legal issue. The defendant in Hewett was charged in an indictment that failed to allege his criminal intent. 158 N.C. at 628, 74 S.E. at 357. Nevertheless, this Court concluded that by alleging that the defendant attempted to commit rape, the indictment necessarily included the intent element. Id. at 629, 74 S.E. at 357. As support for this conclusion, the Court stated:
practically all definitions of an attempt to commit a crime, when applied to the particular crime of rape, necessarily imply and include “an intent” to commit it.
There may be offenses when in their application to them there is a distinction between “attempt” and “intent,” but that cannot be true as applied to the crime of rape. There is no such criminal offense as an “attempt to commit rape.” It is embraced and covered by the offense of “an assault with intent to commit rape,” and punished as such.
As held by the Supreme Court of California, one cannot be indicted for an attempt to commit a crime where the crime attempted is in its very nature an attempt.
*335 Id. at 629, 74 S.E. at 357 (citing, inter alia, People v. Thomas, 63 Cal. 482, 482 (1883) (per curiam)).[2] Since Hewett did not involve a defendant who was “indicted for an attempt to commit a crime where the crime attempted is in its very nature an attempt,” id. at 629, 74 S.E. at 357, this statement is apparently dictum. In any event, because we conclude that attempted assault is not an attempt of an attempt, and thus does not implicate the dicta in Hewett, we do not address the extent to which Hewett may apply to other criminal offenses not at issue in the case subjudice.
Specifically, we observe that by stating that attempted assault amounts to “an attempt to attempt,” 14 N.C. App. at 265, 188 S.E.2d at 12, the court in Currence overlooked an important aspect of the law of assault in North Carolina. Although our statutes criminalize the act of assault, see, e.g., N.C.G.S. § 14-32.4(a) (2015), “[t]here is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules,” Roberts, 270 N.C. at 658, 155 S.E.2d at 305. In Roberts we explained that our common law encompasses “two rules under which a person may be prosecuted for assault in North Carolina.” Id. at 658, 155 S.E.2d at 305 (citation omitted).
First, as Currence recognized, we noted that assault may be defined as “an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.” Roberts, id. at 658, 155 S.E.2d at 305 (citations omitted) (quoting 1 Strong’s North Carolina Index: Assault and Battery § 4 (1957)). We stated that this definition of assault “places emphasis on the intent or state of mind of the person accused.” Id. at 658, 155 S.E.2d at 305.
Second, we described another definition of assault, which the Court of Appeals did not acknowledge in Currence. Compare id. at 658, 155 S.E.2d at 305, with Currence, 14 N.C. App. at 265, 188 S.E.2d at 12. We explained:
The decisions of the Court have, in effect, brought forth another rule known as the “show of violence rule,” which *336 places the emphasis on the reasonable apprehension of the person assailed. The “show of violence rule” consists of a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed.
Roberts, 270 N.C. at 658, 155 S.E.2d at 305. Our jurisprudence regarding the show-of-violence rule appears to have evolved from early cases in which a person caused another to flee, leave a place sooner than desired, or otherwise alter course through the threatened use of a weapon. See State v. Rawles, 65 N.C. 334 (1871); State v. Church, 63 N.C. 15 (1868); State v. Hampton, 63 N.C. 13 (1868). In State v. Shipman, 81 N.C. 513 (1879), one of the earliest cases in which this Court articulated the show-of-violence rule, the evidence showed that the defendant had used threatening language against another man and walked with a knife in his hand to within six feet of where the other man was standing. Id. at 514. Upon seeing this threatening display, the other man became “alarmed” and “left immediately.” Id. at 516. In concluding that the defendant’s behavior constituted assault, this Court explained that the definition of assault encompasses a situation in which “persons having in their possession dangerous weapons, by following and threatening [the victim], put him in fear and induce him to go home sooner than he would have done, or by a different road from that he was wont to go.” Id. at 515 (citing Rawles, 65 N.C. 334).
As defined in Roberts, and as illustrated by Shipman, the show-of-violence rule does not involve an attempt to cause injury to another person, but is based upon a violent act or threat that causes fear in another person. Accordingly, although North Carolina law provides one definition of assault that describes the offense in terms of “an overt act or an attempt, or the unequivocal appearance of an attempt,” our common law also provides a second definition that does not include any reference to attempt. Roberts, 270 N.C. at 658, 155 S.E.2d at 305. Attempted assault is not an attempt of an attempt because assault may be defined by the show-of-violence rule. Cf. State v. May, 137 Ariz. 183, 186, 669 P.2d 616, 619 (Ct. App. 1983) (explaining that because the defendant was charged pursuant to an Arizona statute that defines assault in terms of “an act complete in itself and not an attempt to commit a different crime,” “the academic arguments of whether criminal sanctions should attach to an attempt to commit an attempt are inapplicable”); State v. Music, 40 Wash. App. 423, 432, 698 P.2d 1087, 1093 (1985) (“ ‘Attempt *337 to attempt’ problems may arise with respect to the first type of assault because the attempt to commit a battery is an element of that type of assault. . . . However, since there is no attempt element in the second type of assault, a charge of attempted assault within that definition is not an ‘attempt to attempt.’ ” (internal citation omitted)). We note that there is substantial overlap between the two definitions of assault because an overt act or attempt to do immediate physical injury to another person is likely to constitute a show of violence that causes fear and a change of behavior. As a result, relying upon the show-of-violence rule to define attempted assault does not create a significant limitation on the conduct covered by this offense.
For these reasons, we hold that the offense of attempted assault with a deadly weapon inflicting serious injury is recognized in North Carolina. We therefore reverse the portion of the Court of Appeals’ opinion concluding that attempted assault is not recognized in this state, that defendant’s 2005 conviction is a nullity, and that as a result, the trial court erred by denying defendant’s motion to dismiss the charges of possession of a firearm by a felon and attaining habitual felon status.[3]
Next, the State argues that the Court of Appeals incorrectly determined that defendant was entitled to a new trial based upon the trial court’s alleged failure to recognize and address an impasse between defendant and his attorney during the trial. At the conclusion of defense counsel’s cross-examination of Detective Braswell, defendant became agitated because he did not believe defense counsel was asking the right questions. Defendant stated, “I need to say something to the witness,” began interrupting the trial judge, and then attempted to speak again, at which point the judge directed the jury to step out of the courtroom. After the jury had left the courtroom, this exchange took place:
[Defendant]: You won’t ask him what I need to ask him.
The Court: Thank you. All right, let the record reflect that the twelve members of the jury and the alternate juror have left the courtroom. Let the record reflect that while the jurors were in here, [defendant] started asking questions. I called [defense] counsel to the bench, asked *338 counsel... to go back and talk to [defendant], privately, to determine what [defendant’s] questions were or what [defendant] wanted to present to the jury. [Defense counsel] attempted to do so. In the meantime, [defendant] began speaking out on his own volition in the presence of the jury, and so the Court immediately sent the jury out of the courtroom.
And, [defendant], I can’t let you disrupt this trial, and I’ve already warned you -
[Defendant]: I mean, I can -1 can question the witness.
The Court: Your lawyer questions the witness. You don’t -
[Defendant]: Then I’ll represent myself. I’m firing my lawyer.
The Court: No. No, you can’t do that, I’m soriy.
[Defendant]: See, I can represent myself.
The Court: No, I’m sorry. In my discretion, I’m not allowing you to do that.
[Defendant]: I can represent myself. I can represent myself. It ain’t - ain’t no kind of mess like that, because he ain’t questioned him what I’m going to question him.
The Court: Well, you ask [defense counsel] what you want him to ask the -
[Defendant]: I done told him, and ain’t none of that stuff been done, and I’m going for the --
The Court: You ask [defense counsel] what questions you want to present to the witnesses in front of the jury.
The State then requested a determination regarding whether defendant should be held in contempt and removed from the courtroom for making repeated statements in front of the jury. The trial court instructed defendant to wait his turn before speaking and admonished him to cease engaging in disruptive behavior. Defendant made additional comments regarding the questions he desired to pose to Detective Braswell:
[Defendant]: ... I waited till it was our turn to question this witness, and now I ain’t even questioned him.
*339 The Court: Well, but the way the process works, you don’t ask the questions, your attorney asks the questions.
[Defendant]: He didn’t ask - I told him to ask him. Things wasn’t stated. It was things I needed -1 needed to [sic] them to hear.
The Court: He is a professional. He is -
[Defendant]: The truth be told about -
The Court: - very experienced. He knows what he’s doing. The manner in which he asks questions is part of the expertise provided by counsel. It’s part of the assistance of counsel that’s provided. And you are not an attorney, and you are relying on his assistance].
[Defendant]: I know the law. I know the law.
The Court: - and you can talk to him and confer with him and let him know what questions you think should be asked, but he asks the questions, not you.
[Defendant]: He got - he got to ask them, then, and put things out. That’s the thing, I’ll represent myself. I don’t even need a counsel.
The trial court again denied defendant’s request to represent himself and ordered that he be removed from the courtroom in light of his disruptive behavior throughout the trial, but stated that defense counsel would be given frequent opportunities to consult with his client. Nonetheless, before his removal, defendant continued to challenge his counsel’s questioning of Detective Braswell:
[Defendant]: Well, see, I’ll tell him the question, to ask him something, and he don’t do it. Come on, man.
The Court: Sir, you’re doing it now, and I have not held you in contempt. In my discretion, I have not done that. The State has not brought any obstruction charges -
[Defendant]: Well, I’m - I’m gonna give him - I’m gonna have -- I’m gonna talk to him so he can say what I would say?
The Court: That’s how it works, sir.
[Defendant]: Exactly. And he didn’t do it. That’s what I’m talking about.
*340 The Court: Well, that’s between you and [your trial counsel] -
[Defendant]: I’m gonna get another attorney.
The Court: - that’s not for me to interject.
[[Image here]]
The Court: I’ve given you ample opportunity to not be disruptive, to assist in your defense while in the courtroom. It’s readily apparent to the Court that you’re not willing to do that.
The record does not disclose the nature of the questions defendant wanted his attorney to ask Detective Braswell.
Defendant argues that the trial court’s failure to adequately address the impasse between defendant and his counsel regarding the questions to be asked of Detective Braswell, and the court’s failure to instruct counsel to comply with defendant’s wishes at that time, amounted to a denial of his constitutional rights to control his defense and confront witnesses. Defendant argues, and the Court of Appeals held, that the trial court’s actions violated this Court’s opinion in State v. Ali, 329 N.C. 394, 407 S.E.2d 183 (1991).
In Ali we recognized that tactical decisions, including how to conduct cross-examination, which jurors to strike, and the motions to be made at trial are within the province of the attorney. Id. at 404, 407 S.E.2d at 189 (citation omitted). The defendant in Ali argued that “the trial court denied him his right to assistance of counsel by allowing him, rather than his lawyers, to make the final decision regarding whether [a particular individual] would be seated as a juror.” Id. at 402, 407 S.E.2d at 189. We stated that
when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client’s wishes must control; this rule is in accord with the principal-agent nature of the attorney-client relationship. In such situations, however, defense counsel should make a record of the circumstances, her advice to the defendant, the reasons for the advice, the defendant’s decision and the conclusion reached.
Id. at 404, 407 S.E.2d at 189. Because defense counsel in Ali made such a record, we concluded that the defendant was not denied effective assistance of counsel. Id. at 404, 407 S.E.2d at 189-90.
*341 We have stated that
[ineffective assistance of counsel (IAC)] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing....
[[Image here]]
Accordingly, should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant’s right to reassert them during a subsequent [motion for appropriate relief (MAR)] proceeding.
State v. Fair, 354 N.C. 131, 166-67, 557 S.E.2d 500, 524-25 (2001) (citations omitted), cert. denied, 535 U.S. 1114 (2002). Here, defendant told the trial court that his attorney was not asking the questions defendant told him to ask Detective Braswell; however, the record does not shed any light on the nature or the substance of those desired questions. We note that defendant was generally disruptive throughout trial, was forced to leave the courtroom when this behavior escalated while Detective Braswell was on the witness stand, and had to consult with his attorney outside of court thereafter. In light of defendant’s disruptive behavior, we cannot ascertain, without engaging in conjecture, whether defendant had a serious disagreement with his attorney regarding trial strategy or whether he simply sought to hinder the proceedings. As a result, it cannot be determined from the cold record whether an absolute impasse existed as described in Mi. Accordingly, we vacate this portion of the Court of Appeals’ opinion and remand this case to that court for entry of an order dismissing defendant’s IAC claim without prejudice to his right to assert it in a motion for appropriate relief.
REVERSED IN PART; VACATED IN PART AND REMANDED.
Justice ERVIN did not participate in the consideration or decision of this case.

. Section 14-32 describes three different types of felonious assault with a deadly weapon and assigns varying punishment levels to each as follows:
(a) Any person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury shall be punished as a Class C felon.
(b) Any person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon.
(c) Any person who assaults another person with a deadly weapon with intent to kill shall be punished as a Class E felon.
N.C.G.S. § 14-32 (2016). Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury pursuant to section 14-32(a), but ultimately pleaded no contest to “attempted assault with a deadly weapon inflicting serious injury.” He was punished as a Class F felon.

. Although the 1912 decision in Hewett stated that “[t]here is no such criminal offense as an ‘attempt to commit rape,’ ” the offense of attempted rape is recognized in our law today. See, e.g., State v. Wortham, 318 N.C. 669, 671, 351 S.E.2d 294, 296 (1987) (“[T]he elements of attempted rape are (1) ‘the intent to commit the rape and [2] an overt act done for that purpose.. ..’ ”) (alterations in original) (quoting State v. Freeman, 307 N.C. 445, 449, 298 S.E.2d 376, 379 (1983))).

. The State alternatively argues that even if attempted assault with a deadly weapon inflicting serious injury is not a recognized offense, defendant cannot raise that challenge at this stage in this proceeding because doing so would constitute an impermissible collateral attack. Because we conclude that this offense is recognized in this state, we do not reach the State’s alternative argument.