BERGER, Judge.
On April 4, 2017, a jury found Vincent Edward Smith, Jr. ("Defendant") guilty of first-degree murder, discharging a firearm into occupied property, and felony assault with a deadly weapon inflicting serious injury. Defendant appeals, arguing that the trial court erred (1) by finding Defendant competent to stand trial, and (2) failing to inquire whether Defendant and Defendant's attorneys reached an "absolute impasse" regarding the introduction of evidence. We find no error in part and dismiss in part.
Factual and Procedural Background
The evidence at trial tended to show that on March 12, 2013, Defendant shot and killed his sister's fiancé, Donnie Pridgen ("Pridgen"). The altercation had begun when Pridgen overheard the way Defendant had been speaking to Defendant's mother and sister. Pridgen intervened and they began to argue. At the time, Pridgen was unarmed. Defendant pulled out a handgun and shot Pridgen once in the head. Defendant then fled the scene. Police were unable to locate Defendant when they arrived in response to the shooting. Defendant turned himself in the next day to the Pender County Sheriff's Department. The firearm he had used was never recovered.
On March 28, 2013, Defendant was indicted for first-degree murder, possession of a firearm by a convicted felon, discharging a firearm into occupied property, and assault with a deadly weapon with intent to kill inflicting serious injury.
Prior to trial, two hearings were held on Defendant's competency to stand trial. The first hearing was held on June 14, 2016, in which Dr. Claudia Coleman ("Dr. Coleman"), a forensic neuropsychologist, testified on Defendant's behalf. Dr. Coleman testified that when she evaluated Defendant in 2014 and administered an IQ test, Defendant had a Full Scale IQ of 63 and had exhibited adaptive deficits. Dr. Nicole Wolfe ("Dr. Wolfe"), Supervising Psychiatrist at Central Regional Hospital-Butner Campus, testified for the State that while Defendant has an intellectual disability based on his low IQ, he was competent to stand trial because Defendant could "discuss his case in a way" that was not "detrimental to him," "talk about his prior cases and what happened with those cases," and "describe what was happening with his current case." Based upon these findings, the trial court declared Defendant competent to stand trial.
On January 24, 2017, Defendant's counsel requested Dr. Coleman to reevaluate Defendant due to concerns that Defendant was "expressing irrational ideas about the legal system, irrational ideas about his case, and not working with his defense team in a rational manner." Dr. Coleman opined in her report that Defendant's "intellectual disability prevent[ed] him from understanding the nature and object of the proceedings against him," and that Defendant did "not comprehend his situation and [wa]s unable to assist his defense counsel." On February 17, 2017, Defendant's counsel hired another forensic psychiatrist, Dr. Moira Artigues ("Dr. Artigues"), to independently evaluate Defendant for competency. Dr. Artigues found that Defendant's "low IQ made him ... unable to understand the nature of the proceedings against him and assist in his defense." Subsequently, Dr. Wolfe and Dr. Mark Hazelrigg ("Dr. Hazelrigg") interviewed Defendant on March 15, 2017. All four experts reported their findings to the trial court.
On March 28, 2017, the trial court conducted another competency hearing and made the following findings of fact:
42. Drs. Wolfe and Hazelrigg found from their March 15, 2017, evaluation that the defendant's diagnosis remained unchanged. That he did not have a mental illness. That the defendant has a life-long intellectual disability, low IQ scores and deficits in adaptive functioning. Drs. Wolfe and Hazelrigg testified that the defendant's intellectual disability was not impairing to the point that he is not capable to stand trial. That the defendant exaggerated his intellectual disability during their 2017 interview. That the defendant responded "I don't know" to questions that were very simple and questions that he had previously answered during his 2015 evaluation."
....
52. Dr. Hazelrigg testified that during the 2017 interview the defendant demonstrated he could learn information, process information and communicate the information if he chose to do so. That the 2017 video (showing the interview between the defendant's lawyer and Dr. Artigues) showed that the defendant can be reluctant to answer questions and be difficult to work with but that this was a choice that he was making.
53. Drs. Wolfe and Hazelrigg ... determined the defendant has the ability to understand the facts in this case as described in witness statements and police reports that they reviewed with him.
54. The defendant has had repeated evaluations and he is aware he is accused of shooting the victim Donnie Pridgen. He has consistently denied any recall of having committed this offense and he has also been very careful to not incriminate himself at any time.
55. Drs. Wolfe and Hazelrigg each testified that they are of the opinion after their March 15, 2017, interview that the defendant's cognitive impairments do not affect his ability to consult with and assist his lawyers in his defense and that the defendant possesses the ability to work with his lawyers in a rational and reasonable manner in the preparation of his defense.
56. Drs. Wolfe and Hazelrigg each testified that the defendant was able to discuss aspects of his case that he felt would not be detrimental to his case.
....
58. During the March 28, 2017 hearing the defendant was attentive and was able to follow the proceedings. This was evidenced by the defendant remaining quiet and respectful to the Court during the taking of testimony at the hearing. The defendant interrupted the Assistant District Attorney during his closing statements by blurting out rational comments to what was being said at the time regarding what had occurred at the hearing.
Based on these findings of facts, among others, the trial court again concluded that Defendant was competent to stand trial.
On April 4, 2017, Defendant was found guilty of first-degree murder, discharging a firearm into occupied property, and felony assault with a deadly weapon inflicting serious injury. The trial court sentenced Defendant to life imprisonment without parole for first degree murder and a term of thirty-three to fifty-two months imprisonment for assault with a deadly weapon inflicting serious injury, and arrested judgment for discharging a firearm into occupied property.
Defendant timely appeals, arguing that the trial court erred (1) by finding Defendant competent to stand trial, and (2) failing to inquire whether Defendant and Defendant's attorneys reached an "absolute impasse" on the introduction of certain evidence. We find no error in part, dismiss in part.
Analysis
I. Competency
"When the trial court, without a jury, determines a defendant's capacity to proceed to trial, it is the court's duty to resolve conflicts in the evidence; the court's findings of fact are conclusive on appeal if there is competent evidence to support them, even if there is also evidence to the contrary." State v. Heptinstall, 309 N.C. 231, 234-35, 306 S.E.2d 109, 111 (1983) (citations omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." State v. Chukwu, 230 N.C. App. 553, 561, 749 S.E.2d 910, 916 (2013) (citations and quotation marks omitted).
"Furthermore, the trial court's decision that defendant was competent to stand trial will not be overturned, absent a showing that the trial judge abused his discretion." State v. McClain , 169 N.C. App. 657, 663, 610 S.E.2d 783, 787 (2005). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis , 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted). "The question of defendant's capacity is within the trial's judge's discretion and his determination thereof, if supported by the evidence, is conclusive on appeal." State v. Reid , 38 N.C. App. 547, 548-49, 248 S.E.2d 390, 391 (1978).
No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable [1] to understand the nature and object of the proceedings against him, [2] to comprehend his own situation in reference to the proceedings, or [3] to assist in his defense in a rational or reasonable manner.
N.C. Gen. Stat. § 15A-1001(a) (2017). "A defendant who moves under [this statute] for a determination that he is incapable of proceeding bears the burden of persuasion." State v. Mahatha , 157 N.C. App. 183, 198, 578 S.E.2d 617, 626 (2003).
"Evidence that a defendant suffers from mental illness is not dispositive on the issue of competency." State v. Pratt , 152 N.C. App. 694, 697, 568 S.E.2d 276, 278 (2002). Rather, Section 15A-1001
provides three separate tests in the disjunctive. If a defendant is deficient under any of these tests he or she does not have the capacity to proceed. The test of a defendant's mental capacity to stand trial is whether he has, at the time of trial, the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed.
State v. Mobley , --- N.C. App. ----, ----, 795 S.E.2d 437, 439 (2017) (purgandum[1] ).
For example, in State v. McClain , this Court affirmed the trial court's conclusion that the defendant, who was diagnosed as "mentally retarded" and scored below 70 on IQ tests, was competent to stand trial. McClain, 169 N.C. App. at 662-64, 610 S.E.2d at 787. The McClain Court noted that "[e]vidence that a defendant suffers from mental retardation is not conclusive on the issue of competency" because "[a] defendant need not be at the highest stage of mental alertness to be competent to be tried." Id. at 663, 610 S.E.2d at 787 (citation and quotation marks omitted).
Here, Defendant argues that he should have been found not competent to stand trial under each of the three tests in Section 15A-1001. First, Defendant argues that he was "unable to understand the nature and object of the proceedings against him." However, Defendant understood the penalty for first-degree murder. He explained to Dr. Wolfe and Dr. Hazelrigg the role the prosecutor, defense attorney, judge, and jury plays in the courtroom at trial. He stated that he knew he could receive ten, twenty, thirty years, or life in prison if he were to be found guilty of murder. He also explained that he knew he could get a lesser sentence if he agreed to a plea agreement, but knew that none had been offered at that time.
Second, Defendant argues that he was "unable to comprehend his own situation in reference to the proceedings." However, Defendant was able to identify the individuals who testified at trial. He identified the witnesses who were subpoenaed to testify against him. He knew he was accused of shooting the victim and that he was charged with the murder of his sister's boyfriend. He knew he had to go to trial for these charges. Additionally, he was able to discuss the impact of the evidence available in the case. In fact, he understood and was able to explain that his case was helped by the fact that the firearm had never been recovered by law enforcement.
Third, Defendant argues that he was "unable to assist in his defense in a rational or reasonable manner." Again, we disagree. Prior to trial, Defendant demonstrated he could learn information, process it, and then communicate it if he chose to do so. He was thoughtful in the comments he made about his case and careful not to incriminate himself. He understood the evidence the State had in the case, but he chose not to discuss it. Defendant was able to recall where the incident occurred, the circumstances of the night of the murder, and that his mother had stated that he had argued with Pridgen. Defendant was able to read Dr. Hazelrigg's notes during the 2017 evaluation and asked to have them read back to him along with his mother's statement. He requested copies of discovery to review. He indicated to Dr. Artigues that he had previously reviewed with his lawyers what happened on the date in question. At trial, Defendant asked to see an exhibit introduced for illustrative purposes and asked for a copy of a law enforcement report. He reminded witnesses that they were under oath. He demonstrated that he knew when witness testimonies were inconsistent. Moreover, Defendant understood his constitutional right to a fair trial.
As the trial court's findings of fact were supported by competent evidence, these findings are binding on appeal. Based on these findings, the trial court did not abuse it's discretion when it determined Defendant was competent to stand trial. The evidence tended to show that Defendant understood the nature and object of the proceedings against him; comprehended his situation in regards to trial; and had the ability to assist in his defense in a rational and reasonable manner, but chose not to. The trial court's determination of competency was not "manifestly unsupported by reason or ... so arbitrary that it could not have been the result of a reasoned decision." Hennis , 323 N.C. at 285, 372 S.E.2d at 527 (citations omitted). Therefore, we find no error.
II. "Absolute Impasse"
Defendant next asserts that the trial court erred when it failed to inquire whether Defendant and defense counsel had reached an absolute impasse regarding the admission of three pieces of evidence. We dismiss without prejudice.
It is well established in our courts that
tactical decisions, such as which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, and what trial motions to make are ultimately the province of the lawyer. However, when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control; this rule is in accord with the principal-agent nature of the attorney-client relationship. In such situations, however, defense counsel should make a record of the circumstances, her advice to the defendant, the reasons for the advice, the defendant's decision and the conclusion reached.
State v. Ali , 329 N.C. 394, 404, 407 S.E.2d 183, 189 (1991) (purgandum ).
Here, Defendant contends that an absolute impasse occurred when defense counsel objected to the admission of hearsay testimony. Defense counsel noted in the record that Defendant "doesn't know why the jury can't hear" the inadmissible hearsay statement and that Defendant "thinks it's totally unconstitutional that the jury cannot hear this." In addition, Defendant argues that an impasse occurred when defense counsel refused to cross-examine Defendant's sister and mother about certain issues.
However, as in State v. Floyd , the record here "does not shed any light on the nature or the substance of those desired questions." State v. Floyd , 369 N.C. 329, 341, 794 S.E.2d 460, 468 (2016). Additionally, Defendant's behavior in the current matter was also similar to the defendant in Floyd , who was also "generally disruptive throughout trial." Id. As in Floyd , "[i]n light of [D]efendant's disruptive behavior, we cannot ascertain, without engaging in conjecture, whether [D]efendant had a serious disagreement with his attorney regarding trial strategy or whether he simply sought to hinder the proceedings. As a result, it cannot be determined from the cold record whether an absolute impasse existed as described in Ali ." Id. Accordingly, we dismiss Defendant's argument concerning the purported absolute impasse without prejudice to Defendant's right to assert these issues in a motion for appropriate relief.
Conclusion
We affirm the trial court's conclusion that Defendant was competent to stand trial. We dismiss Defendant's argument regarding a purported absolute impasse with his trial attorney without prejudice to Defendant's right to assert these issues in a motion for appropriate relief.
NO ERROR IN PART; DISMISSED IN PART.
Report per Rule 30(e).
Judges STROUD and DILLON concur.

Our shortening of the Latin phrase "Lex purgandum est. " This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use purgandum to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.