IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-906

No. COA22-227

Filed 29 December 2022

Duplin County, No. 17CRS52836

STATE OF NORTH CAROLINA

v.

DAVID JEROME HESTER, Defendant.

Appeal by Defendant from judgments entered 11 June 2021 by Judge Michael A. Stone in Duplin County Superior Court. Heard in the Court of Appeals 18 October 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Jeremy D. Lindsley, for the State.*

*Christopher J. Heaney for Defendant-Appellant.*

INMAN, Judge.

Defendant David Jerome Hester appeals from judgments entered upon jury verdicts finding him guilty of felony breaking or entering, felony larceny, and felony possession of stolen goods following a series of break-ins at a nonoperational power plant (the "plant") in Duplin County, North Carolina. Defendant contends his trial counsel violated his constitutional rights in three distinct ways: (1) conceding Defendant's guilt without his consent; (2) prejudicially indicating to the jury he did

not believe Defendant's testimony maintaining his innocence; and (3) after reaching an "absolute impasse" as to tactical decisions, disregarding Defendant's directives. After careful review, we remand to the trial court for an evidentiary hearing to determine whether Defendant knowingly consented to his counsel's admissions of guilt and dismiss Defendant's remaining claims without prejudice to filing a motion for appropriate relief below.

## I. FACTUAL & PROCEDURAL BACKGROUND

¶ 2    The evidence of record discloses the following:

¶ 3    In the early morning of 13 December 2017, police found Defendant with his girlfriend, April Crisp, and his acquaintance, Jamie Wiggs, inside a warehouse within the plant. Although the plant was not in operation, the warehouse contained various industrial tools and equipment.

¶ 4    Michael Houston, a former employee familiar with the plant and its contents, visited the plant two or three times a week to ensure its security. During a visit on 6 November 2017, he found evidence indicating someone had broken into the plant and the warehouse: the perimeter fence had been cut, the office door had been pried open, several rooms were in disarray, and numerous items were missing including computers, radios, cell phones, and keys to areas of the plant. Mr. Houston reported this break-in and theft to his supervisors and police.

¶ 5        A few weeks later, Mr. Houston reported another plant break-in. A forklift fuel tank, pipe threaders, and other equipment were missing, and he found carts loaded with other items ready to be hauled away. After this alleged break-in, Mr. Houston and one of the plant owners installed deer, security cameras inside the warehouse to capture any movement. The cameras were programmed to send a text message along with photos to the plant owner's cell phone when movement triggered the cameras.

¶ 6        The plant owner received a text early in the morning of 13 December 2017, notifying him that the cameras had captured movement, and the photos revealed people inside the warehouse. He called the Duplin County Sheriff's Office, and around 1:25 a.m., Patrol Sergeant Kennedy and Deputy Raynor were dispatched to the plant along with State Trooper Edwards. The officers found Defendant, Ms. Crisp, and Mr. Wiggs inside the warehouse. They also discovered bolt cutters outside the warehouse and, on a chain securing the front gate, a blue lock, which did not belong to the power plant.

¶ 7        An investigator and detective from the Duplin County Sheriff's Office obtained warrants to search the two trucks parked at the plant that night, one of which was Defendant's white 2004 Dodge Ram pickup. In Defendant's truck bed, the detectives found a tap and die set, grinding blades, welding leads, machinery parts, pressure gauges, first aid supplies, and red bolt cutters. They also found multiple pairs of work gloves and an assortment of keys—labeled, for example, "small gate," fuel yard,"

"storage building," and "front gate," while other keys had "danger signs" attached to them—in the cab of the truck.

¶ 8        A grand jury indicted Defendant on three counts each of felony breaking and entering, felony larceny after breaking and entering, and felony possession of stolen goods as well as ancillary counts of habitual felon status and habitual breaking or entering for the alleged break-ins at the plant on 5-6 November, 10-11 November, and 12-13 December 2017. Defendant pleaded not guilty to all charges.

¶ 9        Defendant's case came on for trial on 7 June 2021. Mr. Houston testified that: (1) the tagged keys found in Defendant's truck belonged to the plant; (2) the gloves found in Defendant's truck were the exact type the plant used for welding; and (3) other items found in Defendant's truck were the type of items used at the plant. However, neither the property manager nor Mr. Houston could produce an updated, itemized list of the property in the plant, and some items Mr. Houston described as missing—a large toolbox, a pipe threader, calibration tools, handheld radios, a battery charger, and computer hard drives—were not found in Defendant's Dodge pickup truck.

¶ 10        Throughout the trial, defense counsel had ongoing trouble with his hearing. After the State rested, Defendant's counsel requested a *Harbinger* inquiry because Defendant had decided to testify in his defense, and the trial court engaged with Defendant about his decision. Before testifying, Defendant told the trial court that

his counsel "can't hear well evidently" and that his counsel did not ask several of the questions of the witnesses which Defendant had requested. The trial court responded, "That's fine. Thank you, sir," but did not investigate further.

¶ 11        Defendant testified and maintained his innocence, explaining that on the night he and Ms. Crisp were found at the plant, he coasted into the property because his truck was having mechanical problems. He could not restart his truck because the battery was dead, so he called Mr. Wiggs to help jump-start his car. Once Mr. Wiggs arrived, the three entered the plant looking for jumper cables. At some point, Ms. Crisp apparently dropped her ring under a forklift, so Mr. Wiggs and Defendant moved the forklift to look for it. As a commercial truck driver and part-time welder, Defendant kept tools in his truck, including sets of keys, a first aid kit, and graphite metal grinding wheels. He testified he never placed any of the plant's property into his truck and had no knowledge of how the plant keys wound up there.

¶ 12        Defense counsel opened his closing argument addressing the jury, "Let me level with you. I agree it's not good to be caught in the act while being in somebody else's building without consent." Throughout his argument, defense counsel repeatedly characterized Defendant as being "caught" and "in the act."

¶ 13        Before the case was submitted to the jury, the State dismissed the two counts of felony possession associated with the 5-6 and 10-11 November break-ins. The jury found Defendant guilty of one count each of felony breaking or entering, felony

larceny after breaking and entering, and felony possession of stolen goods associated with the 12-13 December plant break-in but not guilty of the same charges associated with the other two break-ins on 5-6 and 10-11 November. Defendant entered an *Alford* plea to habitual felon status. The State dismissed the habitual breaking and entering ancillary indictments. The trial court arrested judgment on the felony possession of stolen goods charge and sentenced Defendant to 97 to 129 months in prison. Defendant gave oral notice of appeal from the criminal judgments.

## II.    ANALYSIS

### A. Attorney's Fees Entered against Defendant

¶ 14        Defendant filed a petition for writ of *certiorari* with this Court on 20 May 2022, challenging the attorney's fees entered after Defendant gave oral notice of appeal from the criminal judgments and months after trial because the trial court did not provide Defendant notice or the opportunity to be heard on the issue of attorney's fees as required by *State v. Friend*, 257 N.C. App. 516, 523, 809 S.E.2d 902, 907 (2018).

¶ 15        Although the trial court entered criminal judgments against Defendant on 11 June 2021, the trial court did not personally address attorney's fees with Defendant at trial and did not enter an order for attorney's fees at that time. Instead, the trial court apparently entered judgment for attorney's fees over three months later, on 20 September 2021. But because Defendant did not include the attorney's fees judgment in the record on appeal and did not supplement the record with the judgment

pursuant to our Rules of Appellate Procedure, N.C. R. App. P. 9(d), 11(c) (2022), we cannot review the judgment, and we deny Defendant's petition for review of this issue.

## B. Defense Counsel Conceded Defendant's Guilt

¶ 16      Defendant offers three separate arguments contending his counsel's actions at trial violated his constitutional rights. We review each of Defendant's alleged violations of a constitutional right *de novo. State v. Garner*, 252 N.C. App. 393, 400, 798 S.E.2d 755, 760 (2017). Upon *de novo* review, we consider the matter anew and freely substitute our own judgment for that of the trial court. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

### 1. *Implied Admissions of Lesser-Included Offenses*

¶ 17      Defendant first argues that his counsel conceded his guilt without his consent by referring to Defendant as being "caught" or "in the act" five times throughout the closing argument in violation of *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985). In particular, Defendant contends his counsel's admission that Defendant possessed the stolen keys from the plant and was inside the warehouse without consent directly contradicted Defendant's testimony and amounted to a concession of Defendant's guilt on all charges associated with the 12-13 December plant break-ins, or, at the very least, the lesser-included offenses of misdemeanor breaking or entering and misdemeanor possession of stolen goods. We conclude that, by conceding

Defendant was at the plant without permission and possessed the plant's stolen keys, defense counsel admitted Defendant's guilt as to one count of misdemeanor breaking or entering and one count of misdemeanor possession of stolen goods. Such admissions by counsel required Defendant's consent.

¶ 18 "A criminal defendant suffers a per se violation of his constitutional right to effective assistance of counsel when his counsel concedes the defendant's guilt to the jury without his prior consent." *State v. McAllister*, 375 N.C. 455, 456, 847 S.E.2d 711, 712 (2020) (citing *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-08). A constitutional violation exists whether the admission is express or implied. *Id*. at 475, 847 S.E.2d at 723. "Admitting a fact is not equivalent to an admission of guilt." *Id*. at 469, 847 S.E.2d at 720 (citation omitted). And "defense counsel can admit an element of a charge without triggering a *Harbison* violation." *State v. Arnette*, 276 N.C. App. 106, 2021-NCCOA-42, ¶¶ 42, 45. Requesting that the jury find a defendant not guilty cannot serve to negate trial counsel's previous admissions. *See State v. Cholon*, 284 N.C. App. 152, 2022-NCCOA-415, ¶ 26.

¶ 19 Unlike other types of ineffective assistance of counsel claims reviewed pursuant to *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984), a defendant whose counsel commits *Harbison* error is not required to demonstrate prejudice to obtain relief. *Harbison*, 315 N.C. at 179-80, 337 S.E.2d at 507 ("[W]hen counsel to the surprise of his client admits his client's guilt, the harm is so likely and

so apparent that the issue of prejudice need not be addressed."). No showing of prejudice is required, in large part, because a concession without consent violates a defendant's "absolute right to plead not guilty—a decision that must be made knowingly and voluntarily by the defendant himself and only after he is made aware of the attendant consequences of doing so." *McAllister*, 375 N.C. at 463, 847 S.E.2d at 716 (citing *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507).

¶ 20      Recently, in *State v. McAllister*, our Supreme Court applied *Harbison* to a context in which defense counsel *impliedly* admitted the defendant's guilt during his closing argument. 375 N.C. at 473, 847 S.E.2d at 722. The defendant in *McAllister* was charged with four crimes—assault on a female, rape, sexual offense, and assault by strangulation. *Id.* at 472-73, 847 S.E.2d at 722. During closing argument, counsel stated, "You heard him admit that things got physical. You heard him admit that he did wrong. God knows he did." *Id.* at 473, 847 S.E.2d at 722. Counsel further asserted that the defendant was "being honest" in his videotaped interview with law enforcement when he admitted to smacking, grabbing, backhanding, and pushing the victim. *Id.* at 473-74, 847 S.E.2d at 722-23. Counsel did not address the assault on a female charge during closing, but he repeatedly mentioned the other three, more severe charges. *Id.* at 474, 847 S.E.2d at 722-23. Finally, defense counsel asked the jury to find the defendant not guilty on the three more severe charges yet made no such request for the charge of assault on a female. *Id.* The Court held defense counsel

impliedly admitted defendant's guilt on this count, resulting in *Harbison* error, by: (1) vouching for the truth of the defendant's interview statements; (2) interjecting his personal opinion to imply the defendant lacked justification in his use of force towards the victim; and (3) omitting the charge of assault on a female from the list of charges for which he asked the jury to find the defendant not guilty. *Id.*

¶ 21        Here, Defendant was charged with three separate instances of three crimes—felony breaking or entering, felony larceny after breaking or entering, and felony possession of stolen goods—and respective lesser-included offenses. Felonious breaking or entering has three elements: that a defendant (1) breaks or enters; (2) a building; (3) with the intent to commit a felony or larceny therein. *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992); N.C. Gen. Stat. § 14-54(a) (2021). Non-felonious breaking or entering differs in that it need not be done with the intent to commit a felony so long as the breaking or entering was wrongful, without any claim of right. § 14-54(b). Felony larceny after breaking and entering has four elements: that a defendant (1) takes and carries away another person's property; (2) without that person's consent; (3) from a building after breaking and entering; and (4) knowing that he was not entitled to deprive the victim of the item's use. *State v. Redman*, 224 N.C. App. 363, 365-66, 736 S.E.2d 545, 548 (2012); N.C. Gen. Stat. § 14-72(b)(2) (2021). Felony possession of stolen goods also has four elements: that a defendant (1) possessed personal property; (2) which was stolen pursuant to a

breaking or entering; (3) knowing or having reasonable grounds to believe the property was stolen pursuant to a breaking or entering; and (4) acted with a dishonest purpose. *State v. McQueen*, 165 N.C. App. 454, 459, 598 S.E.2d 672, 676 (2004); N.C. Gen. Stat. § 14-71.1 (2021). Misdemeanor possession of stolen goods differs from felonious possession only in that the State need not prove that the property was stolen pursuant to a breaking or entering. *See* § 14-72(a).

¶ 22      Defense counsel described Defendant as "caught" or "in the act" several times during closing argument:

> Let me level with you. I agree *it's not good to be caught in the act* while being in somebody else's building *without consent*.
>
> It ain't good to identify yourself to then *er caught on camera* while *you* are in somebody else's building *without consent*.
>
> . . . .
>
> And that happened because they were *caught in the act* and they searched the trucks. One of them being Mr. Hester's truck, a 2004 Dodge Ram.
>
> . . . .
>
> And when it comes to the December, the last incident where *he was in the act*, it was in the warehouse, they're bringing three charges; felony breaking and entering, felony larceny after breaking and entering, and felony possession of stolen goods.
>
> . . . .

> I agree with you, *it looks pretty bad* for the December
> 12th, 13th offense, when you are in a warehouse *caught*,
> bundled up in the wintertime, and identify yourself on
> camera. That *looks pretty bad*. But does that prove—does
> that—anything else?

(Emphasis added). Then defense counsel addressed the "elephant in the room, the keys," which "appear[ed] to belong to the power plant," quipping "keys don't grow from the ground and they don't materialize as in Star Trek." In closing, defense counsel urged the jurors not to "shut [their] eyes to what [they] saw" but ultimately requested a not guilty verdict on all counts.

¶ 23    Coloring defense counsel's statements as an acknowledgement of the undisputed fact that Defendant was in the warehouse at the plant on the night of 13 December, the State argues defense counsel did not admit Defendant's guilt of the charged offenses, expressly or impliedly, during closing argument. That Defendant was inside the warehouse on 12-13 December was not disputed at trial; Defendant admitted he entered the plant warehouse, and police found him there. But Defendant never conceded in his testimony that he was there without consent. Beyond Defendant's presence in the plant, defense counsel's repeated characterization of Defendant as "caught" and "in the act" at the plant implied he was there unlawfully, without consent of its owners. Defendant also denied putting any plant property in his truck and testified he "didn't know" how the keys got there. He never admitted he had actual or constructive possession of the keys. Yet, defense counsel referred to the

keys as the "elephant in the room," which "don't grow from the ground" and "don't materialize as in Star Trek" and conceded the keys found in Defendant's truck "appear[ed] to belong to the power plant."

¶ 24 As in *McAllister*, defense counsel in this case undermined Defendant's credibility by casting doubt on his testimony at trial, interjected his personal opinion that Defendant had been caught "in the act," and made implied admissions of Defendant's guilt as to the lesser-included crimes of misdemeanor breaking or entering and misdemeanor possession of stolen goods. *See McAllister*, 375 N.C. at 474, 847 S.E.2d at 722-23; *State v. Matthews*, 358 N.C. 102, 109, 591 S.E.2d 535, 540 (2004) ("For us to conclude that a defendant permitted his counsel to concede his guilt to a lesser-included crime, the facts must show, at a minimum, that defendant *knew* his counsel were going to make such a concession. Because the record does not indicate defendant *knew* his attorney was going to concede his guilt to second-degree murder, we must conclude defendant's attorney made this concession without defendant's consent, in violation of *Harbison*." (emphasis in original)). *Cf. State v. Gainey*, 355 N.C. 73, 92-93, 558 S.E.2d 463, 476 (2002) (holding no concession of guilt because of "the consistent theory of the defense that defendant was not guilty"); *State v. Greene*, 332 N.C. 565, 572, 422 S.E.2d 730, 734 (1992) (holding no admission of guilt where "[t]he clear and unequivocal argument was that the defendant was innocent of all charges"). And like counsel in *McAllister*, defense counsel only

challenged the State's evidence for the charges associated with the first two alleged break-ins, not the third, for which he was convicted. *See McAllister*, 375 N.C. at 474, 847 S.E.2d at 722-23.

¶ 25 As in *Harbison* and *Matthews*, defense counsel's admissions to the lesser-included crimes of misdemeanor breaking or entering and misdemeanor possession of stolen goods amount to *Harbison* error. *See Harbison*, 315 N.C. at 178-81, 337 S.E.2d at 506-08 (remanding for a new trial where defense counsel explicitly admitted the defendant's guilt during closing argument and requested the jury convict him of the lesser crime without the defendant's consent); *Matthews*, 358 N.C. at 109, 591 S.E.2d at 540 ("*Harbison* requires that the decision to concede guilt to a lesser included crime 'be made exclusively by the defendant.'" (quoting *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507)). Defense counsel's ultimate request to the jury for a not guilty verdict on all counts cannot negate his admissions of Defendant's guilt for those misdemeanor crimes. *See Cholon*, ¶ 26.

¶ 26 Recognizing the *McAllister* Court's admonition that a "finding of *Harbison* error based on an implied concession of guilt should be a rare occurrence," *McAllister*, 375 N.C. at 476, 847 S.E.2d at 724, we conclude this case presents such an occurrence. Defense counsel's comments about the keys and Defendant's presence at the warehouse without consent constitute the "functional equivalent of an outright admission of the defendant's guilt as to" the crimes of misdemeanor breaking or

entering and misdemeanor possession of stolen goods. *Id.* at 475, 847 S.E.2d at 723 (citation omitted). While perhaps a valid trial strategy, such admissions required Defendant's consent. *Id.*, 847 S.E.2d at 723-24; *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507 ("This Court is cognizant of situations where the evidence is so overwhelming that a plea of guilty is the best trial strategy. However, the gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands.").

### 2. *No Record Evidence Defendant Consented to Admissions*

¶ 27 Having determined defense counsel implicitly admitted Defendant's guilt to two misdemeanor crimes, we must next consider whether Defendant consented to the admissions. After the State rested, defense counsel indicated to the trial court that the defense would "most likely not" present any evidence. However, following a break for lunch, defense counsel informed the trial court that his client wished to testify and asked the trial court "to engage in the *Harbinger* (sic) inquiry to make sure that the defendant understands the risks he faces in choosing to testify." The trial court distinguished between *Harbinger* and *Harbison* and then apprised Defendant of his right to remain silent and not *testify*. Before he testified, Defendant expressed concern that his counsel had difficulty with his hearing and failed to ask witnesses questions he requested. The trial court responded, "That's fine. Thank you, sir" but did not investigate further. Notwithstanding this exchange about Defendant's choice to

testify, neither defense counsel nor the trial court engaged with Defendant about his right to consent to any admission by his counsel pursuant to *Harbison*, though Defendant maintained his innocence throughout trial. *See Harbison*, 315 N.C. at 177, 180, 337 S.E.2d at 506-07 (holding prejudicial error where counsel requested that the jury find the defendant guilty of manslaughter instead of first-degree murder but "the defendant steadfastly maintained that he acted in self-defense").

¶ 28    "[A]n on-the-record exchange between the trial court and the defendant is the preferred method of determining whether the defendant knowingly and voluntarily consented to an admission of guilt during closing argument," but such a colloquy is not the "sole measurement of consent." *State v. Thompson*, 359 N.C. 77, 120, 604 S.E.2d 850, 879 (2004) (citation omitted). Our Supreme Court has "made clear that the absence of any indication in the record of defendant's consent to his counsel's admissions will not—by itself—lead us to 'presume defendant's lack of consent.'" *McAllister*, 375 N.C. at 477, 847 S.E.2d at 725 (citations omitted).

¶ 29    Therefore, we remand to the trial court for an evidentiary hearing as soon as practicable for the sole purpose of determining whether Defendant knowingly consented in advance of his counsel's admissions of guilt to misdemeanor breaking or entering and misdemeanor possession of stolen goods. *See id.*; *Cholon*, ¶¶ 28-29 (remanding for an evidentiary hearing to determine whether the defendant knowingly consented to his counsel's admissions). On remand, the trial court shall

make findings of fact and conclusions of law and enter an order. *See McAllister*, 375 N.C. at 477, 847 S.E.2d at 725.

**C. Defendant's Remaining Claims**

¶ 30        In the event the trial court determines Defendant consented to his counsel's admissions on remand, and thus no *Harbison* error exists, Defendant also argues: (1) for the same reasons outlined above, defense counsel violated his Sixth Amendment right to counsel by prejudicially indicating to the jurors he did not believe Defendant was innocent, contradicting Defendant's testimony, and undermining Defendant's credibility; and (2) after Defendant and his counsel reached an "absolute impasse" about tactical decisions, defense counsel disregarded, intentionally or because of a hearing impairment, his directives about examining witnesses. These claims may be rendered moot by the trial court's determination of the *Harbison* issue on remand, and in any event cannot be decided on the record before us. We therefore dismiss Defendant's remaining claims without prejudice to him filing a motion for appropriate relief below. *See State v. Floyd*, 369 N.C. 329, 341, 794 S.E.2d 460, 468 (2016); *State v. Kinch*, 314 N.C. 99, 106, 331 S.E.2d 665, 669 (1985).

## III.    CONCLUSION

¶ 31        For the reasons set forth above, we remand to the trial court for an evidentiary hearing regarding Defendant's *Harbison* claim, and we dismiss Defendant's remaining claims without prejudice to Defendant filing a motion for appropriate

relief.

REMANDED IN PART; DISMISSED IN PART.

Judges COLLINS and JACKSON concur.